IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON E. YOUNG, | ) | CASE NO. 1:19 CV 2823 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| ARAMARK CORRECTIONAL | ) | |
| SERVICE LLC, *et al.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **RE MOTION TO DISMISS FOR** |
| Defendants. | ) | **FAILURE TO STATE A CLAIM** |

**I.**

This civil rights case involves allegations of unsanitary food services at Ohio's Mansfield Correctional Institution where the plaintiff, Aaron E. Young, is serving a 37-year sentence.[1]  Purportedly so unsanitary and harmful to his health that Young claims his Eighth Amendment rights have been violated, and that he is now entitled to compensation.

Both defendants, Aramark Correctional Services, LLC and Ryan James, ask that the amended complaint against them be dismissed.  They base their dispositive motion on Fed. R. Civ. P. 12(b)(6).  This rule requires me to take a hard look at the amended complaint to answer a simple question: Does Young state a claim upon which relief can be granted? Because I do not look at the factual merits of his claims at this stage, a ruling for one side

---

[1]  *See*  https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A625294,  last accessed on 3/20/21.

or the other on the motion does not portend either's ultimate victory down the road.

I make three recommended rulings.  First, I recommend that the motion be granted as to all but one of the claims Young asserts under 42 U.S.C. § 1983.  Second, I recommend that the motion be denied as to the negligence claims Young asserts against Aramark and James through the exercise of supplemental jurisdiction.  Third, I recommend that the motion be granted as to a cause of action Young appears to assert against Aramark for an alleged custom and policy that Young claims violates his Eighth Amendment rights.

## II.

*Background*

Young sued the prison food service provider and the food service director when he got tired of waiting for an administrative solution to problems he apparently was encountering with the food service at Ohio's Mansfield Correctional Institution.[2]  The District Judge gave Young an opportunity to file an amended complaint when the initial pleadings and defendants' dispositive motion became a tangled mess.[3]  At the same time, the District Judge referred this case to me for pretrial supervision that includes a report and recommendation for disposition of case-dispositive motions.[4]

*Young's Amended Complaint*

Young took advantage of that opportunity to file an amended complaint.[5]  Like his

---

[2] ECF #1.
[3] ECF #13.
[4] ECF #14.
[5] ECF #15.

original complaint, he sues pro se both the prison's food service provider, Aramark, and the prison's food service director, Ryan James.  While not a model of clarity, Young's amended complaint lays out three legal claims against Aramark and James.

For his first cause of action, Young sues both Aramark and James for violations of 42 U.S.C. § 1983, alleging that Aramark and James "prepared and served him food under unsanitary conditions"[6] in violation of Young's Eighth Amendment rights.[7]  Young asserts that he has exhausted administrative remedies for all of his claims pursuant to the Prison Litigation Reform Act of 1995.[8]  He bases the Court's jurisdiction for this cause of action on 28 U.S.C. §§ 1331 and 1343.[9]

Young's second cause of action against both Aramark and James is for negligence.[10]  Young brings this cause of action under Ohio law, and asserts that the Court can hear his claims based on its supplemental jurisdiction under 28 U.S.C. § 1367(a).[11]

Young appears to assert a third cause of action against Aramark under 42 U.S.C. § 1983, alleging that Aramark has created a custom and policy of preparing and serving food to inmates under unsanitary conditions that violates Young's Eighth Amendment rights.[12]  Aramark and James do not specifically address in their motion to dismiss what appears to be an inchoate third cause of action.  Because Aramark and James

---

[6] *Id.* at 1, ¶ 1.
[7] *Id.* at 6.
[8] *Id.* at 6, ¶ 31.
[9] *Id.* at 1, ¶ 2.
[10] *Id.* at 6-7.
[11] *Id.* at 1, ¶ 2.
[12] *Id.* at 6, ¶ 34.

ask for the entire amended complaint to be dismissed and because Young alleges this cause of action as one of his legal claims, I address it in this report and recommendation.

Young attached to his amended complaint an affidavit from an inmate who complains about having been served food on turquoise food trays that were dirty from "dirt build-up that had settled on the trays," and caused the inmate to get sick.[13]  Young also appends a summary history of his administrative grievance or kite regarding his concern that "the dark-blue food trays are caked with brown dirt" and the choice he is forced to make between either not eating or eating and becoming sick.[14]  This second attachment informs us that the prison granted his grievance, which it identified as grievance #MANCI0318000973.[15]  The third attachment to Young's amended complaint is a follow-up kite he wrote in conjunction with this grievance.[16]  This follow-up kite contains handwritten notes from what appears to be a prison staff member who confirms what Young complained about, namely, that the problematic turquoise food trays were still being used despite earlier representations that Aramark had purchased and had received new food trays, and had replaced the old ones.[17]

*Aramark and James's Motion to Dismiss*

Aramark and James move to dismiss the amended complaint.  They make four principal arguments to support their motion.  First, they argue that the Prison Litigation

---

[13] ECF #15-1.
[14] ECF #15-2, at 1.
[15] *Id.*
[16] ECF #15-3.
[17] *Id.* at 2.

4

Reform Act requires exhaustion of administrative remedies, and Young did not do that for his grievances about the prison food service except for grievance #MANCI0318000973 related to use of the problematic turquoise food trays.[18]

Second, Aramark and James argue that the entire amended complaint should be dismissed based on Fed. R. Civ. P. 12(b)(6) because of Young's failure to state a claim upon which relief can be granted.[19]  They focus on deliberate indifference, which is a requirement for stating a § 1983 cause of action for alleged violations of Eighth Amendment rights.  Aramark and James argue that Young fails to meet this requirement because "the grievance documentation demonstrates Aramark took remedial action."[20] They also argue that negligence is not the same as deliberate indifference to the health and safety of inmates.[21]  Aramark and James assume for the sake of argument, but do not concede, that Young's allegations are sufficiently serious to warrant judicial redress as Eighth Amendment violations.[22]

In their reply brief, Aramark and James expand this argument to include Young's failure to plead his claims about poor prison conditions—including but not limited to the problematic turquoise food trays—in a manner sufficient to meet the pleading requirements set forth in governing Supreme Court case law.[23]  I discuss these cases in the following section of this report and recommendation.

---

[18] ECF #16, at 7.
[19] *Id*.
[20] ECF # 20-1, at 2.
[21] ECF #16, at 9.
[22] *Id.*
[23] ECF #18, at 4.

Third, according to Aramark and James's motion, Young failed to state a claim against James upon which relief can be granted because the amended complaint "seeks to hold Defendant James liable solely because he acted in a supervisory capacity at Aramark."[24] They contend that liability under the doctrine of respondeat superior is insufficient to state a § 1983 claim against James.[25]

Aramark and James's fourth argument addresses the negligence claims Young asserts through the exercise of supplemental jurisdiction under 28 U.S.C. § 1367. They acknowledge that the law leaves the exercise of supplemental jurisdiction to the discretion of the District Judge. Because federal courts have generally declined to exercise that jurisdiction over state law claims when all federal claims have been dismissed, they urge the Court to decline to exercise that jurisdiction.[26] Aramark and James do not take a position on whether the Court should exercise supplemental jurisdiction to hear Young's negligence claims under Ohio law if not all of his federal claims are dismissed.

Young filed an opposition to the motion to dismiss,[27] and Aramark and James filed a reply.[28] In their reply, Aramark and James ask me to dismiss Young's opposition brief as being untimely by two days.[29] The certificate of service on Young's opposition brief shows he timely filed it.[30]

---

[24] ECF #16, at 12.
[25] *Id.* at 11.
[26] *Id.* at 12.
[27] ECF #17.
[28] ECF #18.
[29] *Id.* at 1, n.1.
[30] ECF #17, at 20.

Young then moved for permission to file a supplemental brief in opposition to the motion to dismiss,[31] which I granted.[32]  Because I made clear in my order that briefing was then deemed complete, I denied[33] Aramark and James's motion to file an addendum to their reply brief in support of their motion to dismiss.[34]  I reverse my order regarding Aramark and James's motion to file an addendum so that I may consider their supplemental filing in conjunction with this report and recommendation.[35]

## III.

*General Contours of the Law Governing the Motion to Dismiss*

The law draws some fine but crucial distinctions that govern the adjudication of Aramark and James's motion to dismiss.  A motion to dismiss for failure to state a claim is "a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."[36]

I must first accept the facts Young alleges as true.[37]  The factual allegations in Young's complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."[38]  This law does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

---

[31] ECF #19.

[32] Non-document docket entry, 7/1/20.

[33] Non-document docket entry, 7/9/20.

[34] ECF #20.

[35] ECF # 21.

[36] *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005) (citing *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999)).

[37] *Tesley v. Martin*, No. 18-1158, 2019 WL 11003420, at *3 (6th Cir. Apr. 1, 2019).

[38] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

plausible on its face."[39]  Thus, to avoid dismissal under Fed. R. Civ. P. 12(b)(6), the amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[40]

The law tells us how to identify a claim to relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] In sum, in reviewing Aramark and James's motion to dismiss, I must construe Young's amended complaint "in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."[42]

That Young is a pro se litigant matters to some degree.  "Pleadings drafted by pro se litigants are held to a less stringent standard than those drafted by lawyers and are liberally construed."[43]  Young's pro se amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[44]

---

[39] *Twombly*, 550 U.S. at 570.

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[41] *Iqbal, id.*

[42] *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005)).  *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[43] *Tesley*, 2019 WL 11003420, at *3 (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).

[44] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Nevertheless, Young is "not exempt from the requirements of the Federal Rules of Civil Procedure."[45]

As I noted above, Young's amended complaint has three attachments to it.  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."[46]  Aramark and James do not question that Young's amended complaint refers to these attachments or that they are central to at least some of the claims Young asserts.[47]  Consequently, I consider these attachments in adjudicating the motion to dismiss.

*Required Exhaustion of Administrative Remedies*

At this stage in the litigation, I am "bound to accept the well-pleaded allegations of a complaint as true and to draw inferences and resolve ambiguities in a plaintiff's favor."[48]  But the Prison Litigation Reform Act places an additional requisite step before inmates can sue under 42 U.S.C. § 1983 for poor prison conditions: the exhaustion of administrative remedies.  This requirement is:

> **(a) Applicability of administrative remedies**—No action shall be

---

[45] *Tesley*, 2019 WL 11003420, at *3 (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

[46] *Bassett*, 528 F.3d at 430 (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

[47] *See*, *e.g.*, ECF #15, at 2-3, ¶¶ 9-16.

[48] *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014) (citing *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009), and *Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 258 (6th Cir. 1994)).

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[49]

Young is therefore required to exhaust his administrative remedies before proceeding with a lawsuit on § 1983 claims.  Showing that he has not done so falls on Aramark and James as an affirmative defense for which they bear the ultimate burden of proof on this issue.[50]  "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."[51]  Because Aramark and James have not yet answered the amended complaint where they would assert this affirmative defense, it is appropriate to deal with it in adjudicating their motion to dismiss.[52]

Young sues on grievance #MANCI0318000973 and on other allegedly unsanitary prison conditions.[53]  The exhaustion requirement of 42 U.S.C. § 1997e(a) applies to each claim Young alleges regarding prison conditions.  If he has exhausted administrative remedies as to only some of his claims, his lawsuit proceeds with only those claims and not the others.[54]

Aramark and James do not argue that Young has failed to exhaust administrative remedies as to grievance #MANCI0318000973.  Rather, it is regarding the smorgasbord of

---

[49] 42 U.S.C. § 1997e(a).

[50] *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012); *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001).

[51] *Jones v. Bock*, 549 U.S. 199, 216 (2007).

[52] *Jones*, 549 U.S. at 214–15.  *See also Rembisz*, 590 F. App'x at 504.

[53] *See* ECF #15, at 2-3, ¶¶ 9-16 and ECF #15, at 3-5, ¶¶ 17-25.

[54] *Jones*, 549 U.S. at 219–24.

other complaints that Aramark and James contend that Young has not exhausted administrative remedies.[55]  These other claims include finding foreign objects (*e.g.*, bugs, plastic, paper, rocks) in his meals that would make Young sick; unsanitary conditions in food preparation areas, serving lines, and the dining hall; scattered trash on the serving lines and in food preparation areas; days-old food splattered on the serving line walls and floors, dining tables, food preparation tables, utensils, food kettles, food slicers, and food trays; Aramark employees and inmates wiping down the serving lines with a rag from a "chemical bucket" and then handling food without changing their gloves; the practice by Aramark employees and inmates of handling trash and trash cans and then handling food without changing their gloves; the use of food trays that were not properly dried causing Young to get sick when he ate off of them; Aramark's failure to provide soap for dish washers and its failure to ensure that the water in the dishwashers was changed; the failure by Aramark employees to wear hair nets and beard guards when handling food; service by Aramark of food that was either undercooked or spoiled causing Young to get sick; and service of food that Aramark tried to stretch by watering it down resulting in inadequate portions.[56]

Young alleges that he has exhausted all available administrative remedies on all of these claims.[57]  He also alleges that he filed a complaint as to Aramark employees not being in compliance with regulations that required them to wear hair nets and beard guards when

---

[55] ECF #16, at 7.
[56] ECF #15, at 3-5, ¶¶ 17-24; at 6, ¶ 30.
[57] *Id.* at 6, ¶ 31.

handling food, and that prison officials found those employees to be out of compliance.[58]

Young also alleges that "[o]n numerous occasions, [he] complained to Aramark's employees about the food being spoiled, foreign objects being in the food and the unsanitary conditions of the chow hall. Said complaints would go on deaf ears."[59]

Although Young's allegations regarding his exhaustion of administrative remedies for grievances other than grievance #MANCI0318000973 are conclusory and rather thin, the law requires me to accept these allegations as true. Furthermore, the Supreme Court has made clear that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints."[60] Young's amended complaint contains no language that shows he failed to exhaust administrative remedies. In fact, it contains the exact opposite. Accordingly, it would be contrary to the law to dismiss any of Young's § 1983 claims based on Aramark and James's argument that Young failed to exhaust his administrative remedies.

Admittedly, it is hard to ignore the stark contrast between Young's extensive participation in the formal grievance process as to the problematic turquoise food trays— as reflected in detailed language in the amended complaint and its three attachments—and barely more than a passing reference that his other complaints "would go on deaf ears."[61] This contrast might suggest that he has not exhausted his administrative remedies with regard to his other complaints. To grant Aramark and James's motion on this argument,

---

[58] *Id.* at 4, ¶ 22.
[59] *Id.* at 5, ¶ 25.
[60] *Jones*, 549 U.S. at 216.
[61] ECF #15, at 5, ¶ 25.

however, would be to inject consideration of the allegations on the merits, which the law forbids when I adjudicate a 12(b)(6) motion to dismiss.[62]

*Pleading a Violation of Eighth Amendment Rights*

Young still faces a couple of additional hurdles before stating a claim upon which relief can be granted.  To allege a violation under 42 U.S.C. § 1983, Young must show (1) that Aramark and James acted under color of state law, and (2) that their conduct deprived Young of rights secured under federal law.[63]

As to the first prong, Young alleges that "[e]ach Defendant acted under color of state law and is being sued in their individual capacity."[64] He further alleges that Aramark contracted with the Ohio Department of Rehabilitation and Correction to provide meals to inmates at ManCI,[65] that James as an employee of Aramark is the food service director and reports directly to the warden regarding that service,[66] and that Aramark is responsible for ensuring a sanitary chow hall and the proper preparation and service of the inmates' meals.[67]  These tasks are normally carried out by state actors, such as prison officials.  A

---

[62] *See*, *e.g.*, *Hendricks v. Wessell*, slip op., 2011 WL 7637312, at *2 (S.D. Ohio Dec. 5, 2011), *report and recommendation adopted sub nom.* *Hendricks v. Hazzard*, slip op. 2012 WL 1072295 (S.D. Ohio Mar. 29, 2012) (rejecting failure to exhaust arguments to dismiss prisoner complaints).

[63] *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), and *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)).  *See also* *Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 652–53 (6th Cir. 2014).

[64] ECF #15, at 2, ¶ 6.

[65] *Id.* at 1, ¶ 4.

[66] *Id.* at 2, ¶¶ 5, 10.

[67] *Id.* at 3, ¶ 17.

private entity that contracts with the state to perform traditional state functions acts under color of state law.[68]  Aramark and James do not challenge this first prong.

Satisfying the second prong is more complicated.  Young successfully states an Eighth Amendment claim if he alleges "facts that, if proven, would show that prison officials acted with 'deliberate indifference' towards conditions at the prison that created a substantial risk of serious harm."[69]  The law subdivides this prong into two parts: an objective component and a subjective component.

"The objective component requires an inmate to show that the alleged deprivation is 'sufficiently serious.'  . . .  As the Supreme Court explained in *Farmer* [*v. Brennan*], '[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.' "[70]

In their motion to dismiss, Aramark and James explain that "even if the Court assumes, for the sake of argument, that Plaintiff's allegations are sufficiently serious (which Defendants deny), Plaintiff has not and cannot show that Aramark or Defendant James acted with deliberate indifference."[71]  They describe the constitutional wrong Young alleges as "unsanitary food service practices."[72]  While this broad description might be a way to turn the spotlight away from the severity of Young's specific allegations, Aramark

---

[68] *West v. Atkins*, 487 U.S. 42, 54 (1988).
[69] *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and citing *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997)). *See also Estelle*, 429 U.S. at 105; *LaFaut v. Smith*, 834 F.2d 389, 391–92 (4th Cir. 1987) (opinion by Powell, J.).
[70] *Brown, id.* (quoting *Farmer*, 511 U.S. at 834).
[71] ECF #16, at 9.
[72] *Id.*

14

and James do not challenge and do not cite any case law that would challenge a reasonable conclusion that ongoing, unaddressed, unsanitary food service practices that cause inmates to experience severe stomach pain, nausea, vomiting, and diarrhea[73] do in fact "violate[] contemporary notions of decency"[74] or deprive inmates of the " 'minimal civilized measures [sic] of life's necessities.' "[75]

The focus of their motion to dismiss is instead on the subjective component of this second prong.  "To satisfy the subjective component, an inmate must show that prison officials had 'a sufficiently culpable state of mind.' . . .  'In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.' . . .  Although the deliberate indifference standard 'describes a state of mind more blameworthy than negligence,' this standard is satisfied if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[76]

In determining whether Young has stated a claim on this subjective component, I also must be mindful of the law governing consideration of 12(b)(6) motions generally.

---

[73] ECF #15, at 3.

[74] ECF #16, at 8 (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

[75] *Id.* (quoting *Rhodes*, 452 U.S. at 347).  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (recognizing that "the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed").  *Cf. Tucker v. Rose*, 955 F. Supp. 810, 815–16 (N.D. Ohio 1997) (isolated incidents of rodents in a prison's food service area held to be insufficient to establish the objective component for an Eighth Amendment violation).

[76] *Brown*, 207 F.3d at 867 (quoting *Farmer*, 511 U.S. at 834, 835).  *See also Roland v. Johnson*, 856 F.2d 764, 769 (6th Cir. 1988) (requiring a showing of "a recklessness or callous neglect"); *Doe v. Sullivan Cty., Tenn.*, 956 F.2d 545, 550 (6th Cir. 1992) (same).

That law requires me to determine whether the amended complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. The factual content must allow me to draw the reasonable inference that defendant is liable for the misconduct alleged.

The only claim Young asserts under 42 U.S.C. § 1983 that meets these standards is grievance #MANCI0318000973. Only for this claim are there allegations in the amended complaint that point to Aramark and James knowing of and disregarding an excessive risk to inmate health or safety. The time line of the grievance process is telling in this regard.

Young's grievance #MANCI0318000973 started on March 27, 2018.[77] James writes back to Young on April 3, 2018 telling him that "we [presumably Aramark] will be getting new trays in and supplying the food service with more new trays. Moving forward I ensure you these trays will be clean and ready for service."[78] According to the second attachment to the amended complaint, James had made a similar representation to another inmate a year earlier.[79]

Young repeats his complaint on April 10, 2018.[80] On April 24, 2018, an individual by the name of Charlie Moore reports that "[t]his case has been extended to gather more information, and to further investigate the matter at hand."[81] On May 4, 2018, the same individual reports that "through interviews with Food Service Manager James, and

---

[77] ECF #15-2, at 1.
[78] *Id.*
[79] ECF #15-1.
[80] ECF #15-2, at 1.
[81] *Id.*

Assistant Manager Homerick, it has been determined that the trays were an issue."[82]  He

continues: "Said trays have been discarded, and replaced with new trays that came in on

5/3/18."[83]  The grievance is granted, though Young is encouraged "to kite the Inspector's

Office directly if he has any further issues regarding this matter."[84]

Young did just that on May 16, 2018 when he reports that "as of 5-14-18, Aramark

was still using said trays.  The food service manager, James, is aware that said trays have

made me sick and other inmates sick due to the dirt that is caked/enbedded [sic] in them,

yet they have disregarded this fact that said trays are a health-hazardous [sic] and continue

to use the trays.  (I am served aff [sic] these trays at least 5 times a week.)"[85]  On May 18

2018, Young is apparently informed that the decision to grant his grievance was affirmed

but that his grievance did not qualify for an appeal as a further step in the process.  "This

office will take no further action on this matter at this time."[86]

On May 14, 2018, Young informs the assistant institution inspector of the following:

"With respect to the trays being discarded, Aramark has misled your office to believe that

said trays in question had been removed, when they had not.  Furthermore, Aramark,

knowing the condiction [sic] of the trays, has totally disregarded the health-hazard that said

trays are."[87]  Young asks for an investigation as to why the old trays were still being used

---

[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.* at 2.
[86] *Id.*
[87] ECF #15-3, at 2.

when Aramark had new ones.[88]

Below Young's note is another note in a different handwriting.  It says: "I observed this as well when inspecting the PDR area and the information was relayed to appropriate administration.  You are very welcome and we are continuing to follow up."[89]  Young alleges that "[i]t was not until a few months later, after prison officials went to discard the trays, that Aramark stop [sic] using said trays to serve food on."[90]

Young alleges that on or about February 28, 2018, he approached James and spoke with him about the condition of the food trays.  "James informed Young that he was going to remove the trays because he was aware of the problem and he was in the process of ordering new ones."[91]  Young also alleges that "James has a weekly duty to check the food trays and give a weekly report of the condition of the food trays to the ManCI's warden.  It was discovered, [sic] that James had falsified those reports by stating that the trays were in good condition."[92]  He also alleges that "[t]here were enough food trays that Aramark did not have to use the trays."[93]

These allegations and the time line they provide, if taken as true, mean that for weeks and even months and possibly even a year, Aramark and James deliberately ignored the acknowledged need to replace the old turquoise food trays with new ones even though

---

[88] *Id.*
[89] *Id.*
[90] ECF #15, at 3, ¶ 16.
[91] *Id.* at 3, ¶ 15.
[92] *Id.* at 2, ¶ 10.  In a footnote, Young alleges that "[t]his information was not discovered until months after the trays were discarded."
[93] *Id.* at 2, ¶ 11.

they had the new ones on hand, and in the process deliberately ignored a condition that posed a substantial risk of serious harm to Young and the other inmates. These allegations "involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."[94]

Moreover, Young has alleged constitutional violations directly tied to the conduct of James and to the conduct of Aramark, and has alleged that both were acting under the color of state law at the time. Young has pled that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"—just as Aramark and James themselves believe is required to make out a claim for liability under § 1983.[95] Accordingly, as to his grievance #MANCI0318000973, Young has sufficiently stated a claim upon which relief can be granted under 42 U.S.C. § 1983.

As to all of his other claims beyond the problematic turquoise food trays, Young does not allege sufficient facts, even when accepted as true, to state a claim for relief that is plausible on its face, or that allow me to draw a reasonable inference that Aramark and James are liable for the misconduct alleged under 42 U.S.C. § 1983. He does not allege sufficient facts to show, or to allow me to draw a reasonable inference, that Aramark and James had a state of mind more blameworthy than negligence—that they knew of and disregarded an excessive risk to inmate health or safety with regard to Young's other prison condition complaints. That is, for all his other claims, Young does not allege deliberate

---

[94] *Whitley v. Albers*, 475 U.S. 312, 319 (1986).
[95] ECF #16, at 11.

indifference sufficient to meet the standard's subjective component.

Young's allegations on these other problems amount to observations of the prison food service that he made "on a daily basis"[96] or "[a]lmost on a daily basis"[97] between December 2017 and December 2019.  His observations, however, whether taken individually or collectively, do not allege deliberate indifference as Young does with regard to the problematic turquoise food trays.

For example, Young never alleges that Aramark or James knew of these other apparent problems, knew of the health problems they created, and deliberately disregarded those risks.  He claims that "[o]n numerous occasions, [he] complained to Aramark's employees about the food being spoiled, foreign objects being in the food and the unsanitary conditions of the chow hall.  Said complaints would go on deaf ears."[98]  There is nothing in this allegation or Young's observations that allows me to draw a reasonable inference that even the employees who heard him complain had a state of mind more blameworthy than negligence.  These allegations fall short of the subjective component of deliberate indifference.

Young alleges that on one occasion, an Aramark employee admitted to him that Aramark serves and prepares meals under unsanitary conditions, and stated, " 'it is not our problem that we have to cook and serve y'all food in a filthy chow hall.  Maybe if your fellow inmates cleaned up the chow hall it would not be so disgusting.' "[99]  This allegation

---

[96] ECF #15, at 4, ¶ 18.
[97] *Id.* at 4, ¶ 21.
[98] *Id.* at 5, ¶ 25.
[99] *Id.*

suggests that at least some portion of the other unsanitary conditions can be attributed to inmates and not to Aramark employees at all.

For some of these other prison food service conditions that Young tries to wrap into his § 1983 claim, his allegations fall short on the objective component of deliberate indifference as well where he must show that he is incarcerated under conditions posing a substantial risk of serious harm. He alleges getting sick after eating food that had foreign objects in it,[100] after eating off of food trays that had not been completely dried after being washed,[101] and after eating food that was spoiled or insufficiently cooked.[102] But for all the other poor prison conditions he observes,[103] Young alleges no substantial risk of serious harm sufficient to state a claim under § 1983.

As a catch-all, Young alleges that prisons officials at ManCI had written numerous complaints against Aramark for serving and preparing food under unsanitary conditions;[104] that the ODRC had fined Aramark over $100,000 for serving food in unsanitary chow halls and serving food that was not nutritionally adequate and that posed an immediate danger to inmates' health;[105] that prison officials had alerted the Richland County Board of Health about the unsanitary food service conditions at ManCI, and that the Board determined that Aramark was preparing and serving meals under unacceptable conditions, and fined

---

[100] *Id.* at 4, ¶ 17.
[101] *Id.* at 4, ¶ 21.
[102] *Id.* at 5, ¶ 24.
[103] *Id.* at 4, ¶¶ 18, 19, 20, 22; at 6, ¶ 30.
[104] *Id.* at 5, ¶ 26.
[105] *Id.* at 5, ¶ 27.

Aramark;[106] and that ManCI's chow hall is the dirtiest of all Ohio prisons.[107]  These allegations certainly paint a grim picture of the food service at ManCI, but they provide no time frame and no detail as to the legal standards used in these various alleged findings. These general allegations, like Young's general observations about food service conditions at ManCI, fall short of alleging deliberate indifference as is needed to state a claim under 42 U.S.C. § 1983.

*Young's Negligence Claims and Supplemental Jurisdiction*

As I noted above, Aramark and James challenge the exercise of supplemental jurisdiction to hear Young's negligence claims solely based on the assumption that all of his federal claims would be dismissed under Fed. R. Civ. P. 12(b)(6).  I recommend that one of Young's § 1983 claims not be dismissed.  Accordingly, I address whether Young's claims of negligence under Ohio law against Aramark and James should be dismissed without prejudice or should be litigated together with his remaining claim under 42 U.S.C. § 1983.

I first observe that the exercise of supplemental jurisdiction is left to the discretion of the Court.  "The question of power will ordinarily be resolved on the pleadings.  But the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation.  Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims, or likelihood of jury confusion, which could not have been

---

[106] *Id.* at 5, ¶ 28.
[107] *Id.* at 5, ¶ 29.

anticipated at the pleading stage."[108]

That being said, it is clear that Young's § 1983 claim and his negligence claims "derive from a common nucleus of operative fact."[109]  This is the touchstone for determining whether supplemental jurisdiction should be exercised.

> The test in *Gibbs* remains the standard for pendent jurisdiction: "[t]he state and federal claims must derive from a common nucleus of operative fact.  But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole."[110]

That common nucleus of operative fact concerns the inmate food service at ManCI. Although Young's negligence claims range from improper food preparation to cleanliness in the food preparation and food service areas to the ways the food was handled and served,[111] all of his claims—whether under federal or state law—boil down to the alleged unsanitary conditions of ManCI's food service to inmates.  Moreover, Young alleges the involvement of only one private contractor (Aramark) and only one food service director (James) over one time period (roughly December 2017 through December 2018).

Without regard to their federal or state character, Young's claims relating to the food service at ManCI are such that he would ordinarily be expected to try them all in one judicial proceeding.  The witnesses would be the same, the defendants would be the same, the time period would be the same, the situs of the alleged wrongs would be the same, the

---

[108] *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727 (1966).
[109] *Gibbs*, 383 U.S. at 725.
[110] *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (quoting *Gibbs*, 383 U.S. at 725).
[111] ECF #15, at 3-5, ¶¶ 17-24; at 6, ¶ 30.

scope and nature of the remedy would be the same, and the evidence would essentially be the same—possibly covering a broader range of prison conditions for the negligence claims but all still related to inmate food service.   Plainly there is a "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state law claims."[112]

The only factor weighing against the exercise of supplemental jurisdiction is the number of poor prison conditions Young identifies as negligence under state law (ten) compared to the number of poor prison conditions that would remain to be litigated under federal law if the District Court adopts this report and recommendation (one).   In this regard, the question is whether "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness,"[113] and whether those state issues should be dismissed without prejudice and left for resolution by an Ohio state court.

It is too early in the litigation to answer this question.   The parties have yet to conduct discovery, and motions for summary judgment will potentially narrow the scope of Young's claims even further.   Furthermore, the number of the poor prison conditions Young claims are the result of Aramark and James's negligence will likely be reduced through consolidation as evidence is developed through discovery.   It is most prudent at this early stage in the litigation to wait.   This is particularly true for a question like supplemental jurisdiction that remains open throughout the litigation.

---

[112] *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986).
[113] *Gibbs*, 383 U.S. at 726.

"A trial court must balance the interests in avoiding needless state law decisions . . . against the 'commonsense' policies of judicial economy . . . when deciding whether to resolve a pendent state claim on the merits."[114]  I find that, at this stage in the case, the balance weighs in favor of trying Young's negligence claims together with his § 1983 claim.  Accordingly, I recommend that Aramark and James's motion to dismiss be denied as to Young's negligence claims.

*Young's Inchoate Cause of Action*

In his amended complaint under the section captioned "Legal Claim," Young alleges that "Aramark has created a custom and policy of preparing and serving food under unsanitary conditions that caused [sic] by Aramark failing to supervise its employees as set forth supra.  Said custom and policy violated Young's Eight [sic] Amendment right secured under the United States Constitution."[115]  Typically, language regarding a custom and policy is used to impose liability for a constitutional wrong on a municipal entity that would otherwise be immune to suit.[116]  Courts, including the Sixth Circuit, have applied this same approach to impose liability for a constitutional wrong on private corporate entities as well.[117]  Young appears to be using this language to assert a separate cause of action against Aramark.  To the extent that is his aim, he fails with this particular cause of action to state

---

[114] *Province*, 787 F.2d at 1055 (citing *Gibbs*, 383 U.S. at 726, and quoting *Rosado v. Wyman*, 397 U.S. 397, 405 (1970)).
[115] ECF #15, at 6, ¶ 34.
[116] *See*, *e.g.*, *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Collins v. City of Harker Heights, TX*, 503 U.S. 115, 120-21 (1992).
[117] *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996); *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).

a claim under 42 U.S.C. § 1983 upon which relief can be granted.

A corporate custom theory under § 1983 first focuses on the conduct of the corporation's employee with the aim of tying that conduct to a custom or policy the corporate entity has adopted.  The thing that triggers the constitutional violation, and thus a claim under § 1983, is not the custom or policy itself.  Rather, it is the offensive conduct of the employee who acts in a way that "implements or executes" that custom or policy.[118]

Therefore, Young's third cause of action as alleged fails to state a separate § 1983 claim, because it does not allege implementation or execution of Aramark's alleged corporate policy.  It fails for other reasons as well.  For example, Young does not allege that Aramark ever gave its tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; or that the policy of inaction or the policy Young alleges was the moving force behind the constitutional deprivation.[119]

The language Young uses appears to create at best an inchoate cause of action.[120]  It is incomplete or imperfect—and probably unnecessary and out of place as one of his legal claims.  Young likely included this allegation as a way to impose § 1983 liability on Aramark for the claims he asserts, including grievance #MANCI0318000973.  Aramark's

---

[118] *Monell*, 436 U.S. at 690.  *See also Collins*, 503 U.S. at 123; *Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007) (finding a municipality can be held liable under 42 U.S.C. § 1983 only when execution of the policy or custom inflicts the injury).

[119] *See*, *e.g.*, *D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014); *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005).

[120] *See* What is INCHOATE? definition of INCHOATE (Black's Law Dictionary) (thelawdictionary.org), last accessed on 3/23/21.

liability for James's conduct, however, cannot rest on a theory of respondeat superior when claiming a civil rights violation under § 1983.[121]  A plaintiff gets around this limitation by alleging a custom or policy.  When the entity's employees act to implement the custom or policy and that conduct causes a constitutional violation, the plaintiff can then sue both the employee and the entity.  By alleging the corporate entity's custom and practice, the plaintiff alleges "a substitute for the doctrine of respondeat superior as a basis for imposing liability on the [entity] for the tortious conduct of its agents."[122]

If this was Young's purpose behind this allegation, then he has alleged an additional theory by which Aramark can be held responsible for James's conduct—not a separate cause of action against Aramark.  Adding this theory may have been unnecessary.

Absent this theory, an entity like Aramark "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the [entity] itself is the wrongdoer."[123]  Put somewhat differently, even though § 1983 does not impose vicarious liability on a corporate entity like Aramark for the constitutional torts of its employees, that corporate entity can still be held liable under § 1983 for a constitutional violation directly attributable to it.[124]  Young alleges precisely that when it alleges that Aramark is one of two wrongdoers.  For example, he alleges that Aramark contracted with the ODRC to provide meals to inmates at ManCI,[125] was obligated to purchase new food

---

[121] *Monell*, 436 U.S. at 691; *Collins*, 503 U.S. at 122.
[122] *Collins*, 503 U.S. at 124.
[123] *Collins*, 503 U.S. at 122.
[124] *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).
[125] ECF #15, at 1, ¶ 4.

trays but didn't do so between 2012 and 2018,[126] delayed use of the new trays even after they were purchased,[127] and had the duty to ensure that the chow hall was sanitary and that food was properly prepared and served even though that was allegedly not done.[128]

In sum, the language Young uses regarding custom and policy does not state a separate cause of action.  To the extent he is attempting to plead a separate cause of action against Aramark through this allegation, he fails to state a claim under 42 U.S.C. § 1983 upon which relief can be granted.  Accordingly, I recommend that this cause of action be dismissed with prejudice.

## IV.

For the foregoing reasons and for good cause shown, I recommend that Aramark and James's motion to dismiss Young's amended complaint for failure to state a claim[129] be granted in part and denied in part.  My specific recommendations are as follows:

I recommend that the motion to dismiss be granted as to Young's first cause of action against Aramark and James under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights, but denied as to Young's claim regarding the problematic turquoise food trays (grievance #MANCI0318000973).  Accordingly, I recommend that all of Young's claims against Aramark and James brought under 42 U.S.C. § 1983 in his first cause of action, except his claim regarding the problematic turquoise food trays (grievance

---

[126] *Id.* at 3, ¶ 14.
[127] *Id.* at 3, ¶ 16.
[128] *Id.* at 3, ¶ 17.
[129] ECF #16.

#MANCI0318000973), be dismissed without prejudice.

I further recommend that the motion to dismiss be denied as to Young's second cause of action against Aramark and James for negligence under Ohio law.

I further recommend that the motion to dismiss be granted as to Young's third cause of action against Aramark for violation of his Eighth Amendment rights brought under a corporate custom theory of 42 U.S.C. § 1983 liability.  Accordingly, I recommend that Young's third cause of action against Aramark brought under a corporate custom theory of 42 U.S.C. § 1983 liability be dismissed with prejudice.


Dated: March 29, 2021                    s/ William H. Baughman, Jr.
                                          United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of service of this notice.  Failure to file timely objections within the specified time shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.[*]

---

[*] *See* LR 72.3(b); *Thomas v. Arn*, 474 U.S. 140, 155 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991).