**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | | |
|---|---|---|
| AARON E. YOUNG, | ) | CASE NO. 1:19-CV-02823-DCN |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| ARAMARK CORRECTIONAL | ) | JENNIFER DOWDELL ARMSTRONG |
| SERVICE LLC, RYAN JAMES, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants, | ) | |

## I.     INTRODUCTION

Defendants Aramark Correctional Services, LLC and Ryan James ("Defendants") filed a Motion for Summary Judgment (ECF Doc. 60) on Plaintiff Aaron E. Young's ("Mr. Young") Amended Complaint (ECF Doc. 15) on December 14, 2022. On January 9, 2023, Mr. Young filed a Motion for Enlargement of Time to File Summary Judgment ("Motion for Enlargement," ECF No. 61.)  This matter is before me pursuant to U.S. District Court Judge Donald C. Nugent's order of referral for general pretrial supervision, including the preparation of reports and recommendation for the disposition of case dispositive motions. (*See* ECF Doc. 14).

For the reasons set forth below, I GRANT Plaintiff's Motion for Enlargement (ECF Doc. 61) but order Mr. Young to utilize his case manager to deliver case documents for filing to prevent additional alleged delivery-related issues with ManCI's mailing system. I further RECOMMEND that the Court GRANT Defendants' Motion for Summary Judgment because: (1) Mr. Young has

1

abandoned his negligence claim; and (2) Mr. Young has failed to establish that there is a genuine issue of material fact regarding the objective component and proximate causation prong of his Eighth Amendment claim, (ECF Doc. 60).

## II.    RELEVANT PROCEDURAL HISTORY

Mr. Young, *pro se*, is an incarcerated individual at the Mansfield Correctional Institution ("ManCI"). (ECF Doc. 15, PageID#98). On April 13, 2020, Mr. Young filed an Amended Complaint, asserting: (1) a state law negligence claim against Defendants for "preparing and serving food under unsanitary conditions, and serving food that was spoiled and not properly cooked") (*id.* ¶¶ 35-36); (2) a "condition of confinement" claim pursuant to the Eighth Amendment and 42 U.S.C. § 1983, claiming that he became ill each time he ate from certain turquoise trays used by Defendants to serve food to inmates between January to May/June 2018; and (3) a "custom or policy" claim pursuant to the Eight Amendment and 42 U.S.C. § 1983 for an alleged custom and policy by Aramark of preparing and serving foods to inmates under unsanitary conditions. (*See* ECF Doc. 15, PageID#103-04).[1] Defendants moved to dismiss all of Mr. Young's claims on January 28, 2020. (ECF Doc. 5).

On March 29, 2021, Magistrate Judge Baughman issued a Report and Recommendation that the Court grant in part and deny in part Defendants' Motion to Dismiss. (ECF Doc. 22.) Specifically, Magistrate Judge Baughman recommended that Judge Nugent grant Defendants' motion to dismiss as to Mr. Young's "custom or policy" claim, but deny Defendants' motion to dismiss as to Mr. Young's condition of confinement claim relating to Defendants' use of the turquoise trays and his state law negligence claim relating to the turquoise trays and other alleged

---

[1] Magistrate Judge Baughman noted that Mr. Young's Amended Complaint is "not a model of clarity," but found that Mr. Young's Amended Complaint asserted these three legal claims.   (ECF Doc. 22, PageID#170).

"unsanitary conditions" within the ManCI cafeteria. (*Id.*). Judge Nugent adopted this Report and Recommendation on June 18, 2021. (ECF Nos. 29, 30).

On September 22, 2021, Defendants served their First Set of Combined Requests for Admissions, Interrogatories, and Request for Production of Documents. (*See* ECF Doc. 32). At the Court's April 7, 2022 case management conference with Magistrate Judge Baughman, Mr. Young informed the Court that he did not receive Defendants' propounded discovery due to post COVID-related issues with the ODRC mail. In an abundance of caution, the Court requested that Defendants serve Mr. Young with a new set of discovery requests.

At Magistrate Judge Baughman's request, Mr. Young's ODRC case manager, Ms. Cherri Thorne, agreed to assist with the delivery of case-related documents due to pandemic-related restrictions to mail at ManCI. (ECF Doc. 35, PageID#252, ¶6).  However, Mr. Young repeatedly failed to comply with Magistrate Judge Baughman's request.  Instead, Mr. Young served his discovery documents personally on multiple occasions, leading to a series of late filings during the discovery process and briefing process that he attributed to pandemic-related restrictions to mail at ManCI or personal error.

On May 2, 2022, both parties were required to serve their Rule 26(A) Initial Disclosures. (ECF Doc. 35, PageID#250, ¶1). Yet, Mr. Young's Initial Disclosures, dated May 14, 2022 (over 12 days after the deadline) were received after the deadline. (ECF Doc. 62-1). Within the service cover letter, Mr. Young wrote the following:

> "Please be advised that on May 2, 2022 I placed my Rule 26 Initial Disclosure in the mail to be mailed to you. On May 13th, I received the letter back. I inadvertently mailed it to myself. Please forgive me for any inconvenience in the delay."

(*Id.*).

On May 24, 2022, Defendants, as required by the Court's order, served their Second Combined Set of Requests for Admissions, Requests for Production of Documents and Interrogatories. (ECF Doc. 62-3). Mr. Young's discovery responses were untimely. While Mr. Young's Certificate of Service was signed on June 25, 2022 (ECF Doc. 62-4), his service envelope was stamped July 11, 2022 – well after the deadline, and over 16 days after the responses were alleged to have been executed by Mr. Young. (ECF Doc. 62-5).

On another occasion, Defendants received documents from Mr. Young several weeks after they were allegedly executed by Mr. Young. On August 30, 2022, Defendants received a letter from Mr. Young dated July 31, 2022. (ECF Doc. 62-6). In response to Mr. Young's letter, Defendants wrote to Mr. Young to request the following:

> "I am in receipt of your correspondence dated July 31, 2022 (received in my office on August 30, 2022) regarding the documents you requested. As an initial matter, and as you may recall during the April 7, 2022 case management telephone conference, the Court instructed the parties to serve documents on each other via your Case Manager(s). However, we continue to receive documents in our office several days after you purportedly send them, leading us to believe that you are only sending them by regular mail. From here forward, ***please provide any and all documents to your Case Manager(s) so they can provide them to us in a timely manner.***"

(*Id.* (emphasis added)).

On December 14, 2022, Defendants moved for summary judgment on Mr. Young's claims. (ECF Doc. 60). On January 9, 2023, nearly a month after the dispositive motion deadline set forth in the Court's April 7, 2022 Case Management Conference Order ("CMC Order," ECF Doc. 35), Mr. Young filed a motion for enlargement of time to file for summary judgment. (ECF Doc. 61). In this motion, he alleged that he placed his briefs in the prison mailbox to be mailed on December 13, 2022, but he received both envelopes back on December 23, 2022, due to a clerical error on the prison's cashier's office that determined that Mr. Young did not have the requisite funds for

postage. (*Id.* at PageID#658). Defendants filed a reply in opposition to Mr. Young's motion on January 20, 2023. (ECF Doc. 62).

On January 28, 2023, Mr. Young filed a sur-reply, alleging that at the Court's July 25, 2022 telephone conference he "informed this Court that he and other inmates at the prison consistently have problems with mail — mailing and receiving." (ECF Doc. 63, PageID#717). He asserts that the late mailing of his summary judgment motion was "no fault of his own" and that under the prison mailbox mule, "whenever [Mr.] Young hand[ed] over his mail to prison officials said motions are filed." (*Id.* at PageID#718). He also filed his Opposition to Defendant's Motion for Summary Judgment. (ECF Doc. 64).

On February 12, 2023, Mr. Young filed a supplemental response to Defendant's reply in opposition to his motion for extension of time to file summary judgment (ECF Doc. 65), reiterating his initial allegations that he had mailing issues and that the prison made a clerical mistake. (*See id.* at PageID#739-40). On February 28, 2023, Defendants filed a reply in further support of their motion of summary judgment. (ECF Doc. 66).

### III.    BACKGROUND

#### A.  *Mr. Young's Amended Complaint*[2]

In his Amended Complaint, Mr. Young alleges that he arrived at ManCI on December 26, 2018. (ECF Doc. 15, ¶ 7). Thereafter, on some unknown day in January 2018, Mr. Young states that he ate from a turquoise tray that allegedly had a "brown substance embedded in it." (*Id.* ¶9). Mr. Young alleges that he became ill later that day. (*Id.*). He further alleges that the "trays were not supposed to be used because the plastic coating had worn off them" and "upon information

---

[2] This is a summary of all allegations regarding the turquoise trays. Any other allegations that deal with other prison food service conditions are not included because the Court granted Defendants' Motion to Dismiss for other conditions of confinement claims not related to the turquoise trays. (ECF Docs. 22, 29, 30).

and belief, a bacteria had settled in the crevices of the trays," causing Mr. Young and other inmates to become ill. (*Id.* ¶ 10). He maintains that although there were enough food trays available, Aramark served food on the turquoise trays every day, and that he was forced to eat from the trays five times per week at a minimum. (*Id.* ¶¶ 11-12). Mr. Young asserts that he became sick after eating his food, and that the sickness – which included severe stomach pain, nausea, vomiting, and diarrhea – would last up to four days. (*Id.* ¶ 12). He alleges that, per Defendant Ryan James's policy, "[inmates] were prohibited from exchanging their trays." (*Id.* ¶ 13). Mr. Young attaches to his Amended Complaint an affidavit of a fellow inmate, Mr. Mark Holmes, in which Mr. Holmes attests to the fact that inmates were not allowed to switch trays. (ECF Doc. 15-1). Mr. Young further alleges that between 2012 to 2018, Aramark did not purchase food trays for ManCI inmates "despite it being its obligation to order[] them." (ECF Doc. 15, ¶14).

On or about February 28, 2018, Mr. Young alleges that he approached Mr. James and spoke with him about the conditions of the turquoise food trays. (*Id.* ¶ 15). In response, Mr. Young asserts that Mr. James informed him that he was going to remove the trays "because he was aware of the problem and he was in the process of ordering new ones." (*Id.*).

On April 10, 2018, Mr. Young filed a grievance with the Inspector of Institutional Services ("IIS") at ManCI regarding the "condition and health-hazard of said trays." (ECF Doc. 15, ¶ 17; ECF Doc. 1-3). On May 4, 2018, the IIS responded to Mr. Young's grievance, acknowledging that the trays had been an issue, but stated that the trays had since been "discarded and replaced with new trays that came in on 5/3/18." (ECF Doc. 15, ¶ 18). On May 16, 2018, Mr. Young filed another grievance stating that the trays were still in use as of May 14, 2018. (*Id.*; ECF Docs. 1-3, 1-4). The IIS department declined any further action on the matter at that time. (ECF Doc. 15, ¶ 18). Mr. Young contends that Mr. James violated the Eighth Amendment by continuing to use the turquoise

6

trays "when he knew that the trays were not to be used [and] that they were causing inmates to get sick." (*Id.* ¶33).

### B.  *Defendants' Motion for Summary Judgment*

On December 14, 2022, Defendants filed a Motion for Summary Judgment. (ECF Doc. 60). In their Motion for Summary Judgment, Defendants assert that they are entitled to judgment as a matter of law because: (1) Mr. Young has failed to proffer evidence sufficient to maintain a negligence claim; (2) Mr. Young cannot establish the "objective" component of an Eighth Amendment claim; (3) Mr. Young cannot establish the "subjective" component of an Eighth Amendment claim; and (4) Mr. Young has failed to proffer evidence to establish a proximate link between the alleged Eighth Amendment violation and his alleged illnesses. (*Id.* at PageID#606-13).

### IV.    ORDER ON MR. YOUNG'S MOTION FOR ENLARGEMENT OF TIME TO FILE SUMMARY JUDGMENT

On April 7, 2022, Magistrate Judge Baughman held a case management conference and issued a CMC Order. (ECF Doc. 35). The CMC Order established in relevant part that: (1) dispositive motions shall be filed on December 14, 2022; (2) opposition briefs shall be filed on January 31, 2023; and (3) reply briefs shall be filed on February 28, 2023.  (*Id.* at PageID#251, ¶ 3). Significantly, this same CMC Order stated that due to pandemic-related restrictions at ManCi, Ms. Cheri Thorne, Mr. Young's case manager, would handle the delivery of case-related documents. (*Id.* at PageID#252, ¶ 6). Pursuant to this CMPO, Defendants timely filed their motion for summary judgment on December 14, 2022. (ECF Doc 60).

On January 9, 2023 – nearly a month after the CMC Order's dispositive motions deadline – Mr. Young filed a motion for extension of time to file his motion for summary judgment, attaching to this filing what appears to be his motion for summary judgment. ("Motion for

Extension," ECF Doc. 61, 61-2). In his Motion for Extension, he asserts, without providing any evidence, that he personally placed his briefs in the prison mailbox on December 13, 2022. (*Id.* at PageID#658). However, he states that he received his mail back and was notified that his cash slips for postage were rejected due to insufficient funds. (*Id.*). He contends that Ms. Thorne contacted the prison cashier's office, and the office informed him that there had been a clerical error and Mr. Young had the requisite postage funds. (*Id.*).

In Mr. Young's reply in support of his Motion for Extension, Mr. Young contends that he informed this Court at a July 25, 2022 case management conference that he "consistently ha[d] problems with mail — mailing and receiving." (ECF Doc. 63, PageID#717). He said that this is the reason Magistrate Judge Baughman arranged that Defendants could e-mail their motions and other correspondence to Ms. Cheri Thorne on Mr. Young's behalf. (*See id.*). He also alleges that the prison mailroom is short-staffed with only one or two staff members handling mail for "two thousand plus inmates on a daily basis Monday through Friday." (*Id.*). He states that when he made complaints regarding mailing and processing delays, "the mailroom blame[d] the cashier's office…and the cashier's office blames the mailroom." (*Id.* at PageID#717-18). He reiterates that his untimely filing of his summary judgment motion is "no fault of his own" and that the prison made a clerical mistake. (*Id.* at PageID#718). He states that under the prison mailbox rule, "whenever [he] hand[s] over his mail to prison officials said motions are filed." (*Id.*).

In a supplemental reply in support of his Motion for Extension, Mr. Young makes the same claims raised in his Motion for Extension and reply in support of the Motion for Extension. (ECF Doc. 65, PageID#739-40). He additionally alleges that he placed his opposition brief to Defendants' summary judgment motion in the prison mailbox on January 28, 2023, but the prison mailroom did not process his mail until February 6, 2023. (ECF Doc. 65, PageID#740). To

8

substantiate this claim, he provides a personal withdrawal check-out slip indicating that this mail was processed on February 6, 2023. (ECF Doc. 65-1). He states that his letter being held for nine days was a violation of ODRC Policy 75-MAL-01(VI)(B)(8). (ECF Doc. 65, PageID#740).

Under the prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). Here, Mr. Young fails to produce *any* evidence that he placed his summary judgment motion in the prison mailbox on December 13, 2022.[3] (*See generally* ECF Doc. 60). However, the withdrawal slip indicates that Mr. Young did place his brief in opposition to Defendants' summary judgment motion in the mail on January 28, 2023, though the brief was not processed until February 6, 2023. (ECF Doc. 65-1); *see also Young v. Mulvaine*, No. 3:18-cv-2807, 2022 WL 2789361, at *1 (N.D. Ohio July 15, 2022) (finding plaintiff's filings to be timely filed under the prison mailbox rule where he offered cash withdrawal slip supporting his assertion that his filings were timely under the prison mailbox rule). Thus, Mr. Young's opposition brief is timely under the prison mailbox rule.

While Mr. Young presents no evidence to corroborate his claims regarding the delayed filing of his motion for summary judgment (*see generally* ECF Docs. 61, 65), Defendants similarly fail to offer any evidence that Mr. Young's briefs were not given to prison officials on the dates on which Mr. Young alleges. (*See generally* ECF Doc. 63). *See Young v. Johnson*, No. 1:14-cv-01237, 2015 WL 523288, at *1 (N.D. Ohio Sept. 8, 2015) (granting plaintiff's request that his brief in opposition be considered timely – although plaintiff "g[ave] no clear explanation why [his] brief" was filed later than the date he handed his brief to prison officials – because defendants gave

---

[3] Significantly, Mr. Young has similarly failed to file motions by court-set deadlines in a previous lawsuit before this District. *See Young v. Johnson*, No. 1:14-cv-01237, 2015 WL 5232886, at *1 (N.D. Ohio Sept. 8, 2015).

no evidence that plaintiff's opposition brief was not provided to prison officials on the date alleged by plaintiff). Accordingly, this Court GRANTS Mr. Young's Motion for Enlargement. (ECF Doc. 61).

Thus, Mr. Young's attached Motion for Summary Judgment (ECF Doc. 61-2) will be considered in this Report and Recommendation in ruling on Defendants' Motion for Summary Judgment (ECF Doc. 60). ***Going forward, however, I ORDER Mr. Young to utilize his case manager to deliver case documents to prevent additional alleged delivery-related issues with ManCI's mailing system.***

## V. LAW & ANALYSIS (MOTION FOR SUMMARY JUDGMENT)

### A. *Summary Judgment Standard of Review*

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the

nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

The Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to designate specific facts or evidence in dispute, and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson,* 477 U.S. at 251-52).

### B.  *Mr. Young's State Law Negligence Claims*

This Report and Recommendation will not address Mr. Young's state law negligence claim because he informed the Court of his intent to "abandon[]" the claim in his Motion for Summary Judgment. (ECF Doc. 61-2, PageID#671). He also wholly failed to address Defendants' arguments regarding his state law negligence claim in his brief in opposition to Defendants' summary judgment motion. (*See generally* ECF Doc. 64); *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24-25 (6th Cir. 2003)) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment"). Accordingly, this Report and Recommendation deems Mr. Young's state law negligence claim as

abandoned and recommends that the Court GRANT Defendant's Motion for Summary Judgment on Plaintiff's state law negligence claim.

### C.  *Mr. Young's § 1983 Claim – Deliberate Indifference (Eighth Amendment)*

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296 (1991). Punishment may not be "barbarous" or violate society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing shelter, and medical care…" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, the Sixth Circuit has held that "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 455-56 (6th Cir. 2011) (quoting *Rhodes*, 452 U.S. at 348).

To establish a claim under the Eighth Amendment, the plaintiff must demonstrate both the objective and subjective elements. First, the plaintiff must demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes*, 452 U.S. at 347); *see also Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). Under the subjective prong, a plaintiff must demonstrate that the defendant acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455 (citing *Farmer*, 511 U.S. at 834).  Additionally, a plaintiff must

establish proximate causation to support an Eighth Amendment claim. *Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993) ("Congress did not intend § 1983 liability to attach where causation is absent.").

### 1.*Objective Component*

To prove the objective element, the plaintiff must demonstrate that the harm to which he was subjected was "objectively, sufficiently serious," such that "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347). Simply put, for a claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834 (additional citation omitted).

Courts have consistently held that isolated incidents of foreign bodies (including rodents and insects) surfacing in the food served to prisoners do not constitute an Eighth Amendment violation. *Tucker v. Rose*, 955 F. Supp 810, 815 (6th Cir. 1997). "The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger*, No. 98-5482, 1999 U.S. App. LEXIS 20168, at *5, 1999 WL 623355 (6th Cir. Aug. 9, 1999); *Harrell v. Blue*, No. 4:09CV-P104-M, 2010 WL 693497, at *3 (W.D. Ky. Feb. 16, 2010) (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)) ("[T]o state a constitutional violation for unsanitary food preparation, a prisoner must do more than allege a single or isolated incidents of contamination."); *Taylor v. Luttrell*, No. 06-2522-An/V, 2008 WL 4065927, at *8 (W.D. Tenn. Aug. 27, 2008).

Additionally, numerous courts have held that the occasional delivery of food on dirty food trays does not meet the objective component of an Eighth Amendment claim. *See, e.g.*, *Wilson v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Foster v. Shouse*, No. 1:16-cv-1081, 2016 WL

6471094, at *3 (W.D. Mich. Nov. 2, 2016) (collecting cases); *Myers v. Aramark Food Servs.*, No. 15-1824-JDT-tmp, 2016 WL 4292639, at *4 (W.D. Tenn. Aug. 15, 2016) (holding that allegations that three instances of being served food on a dirty tray was insufficient to state an Eighth Amendment claim); *Islam v. Jackson*, 782 F. Supp. 1111, 1114-15 (E.D. Va. 1992) (serving one meal contaminated with maggots and serving meals under unsanitary conditions for thirteen days was not cruel and unusual punishment, even though inmate suffered symptoms of food poisoning on one occasion).[4]

In his motion for summary judgment, Mr. Young asserts that he satisfies the objective prong of his Eighth Amendment claim. He acknowledges that occasional or episodic incidents of contaminated food do not arise to a constitutional violation. (ECF Doc. 61-2, PageID#665 (citing *Harrell v. Blue*, No. 4:09CV-P104-M, 2010 WL 693497, at *3 (W.D. Ky. Feb. 16, 2010). However, he alleges that this was far from an isolated incident. (*Id.* at PageID#655). Specifically, he points to the allegation in his Amended Complaint that he solely depended on Defendant to provide meals because he was indigent. (*Id.* at PageID#665) (citing ECF Doc. 15 ¶¶ 2, 12). Mr. Young further alleges that "routine, ongoing, and unaddressed unsanitary conditions" allegedly caused by Defendants serving him food on the turquoise trays resulted in him becoming ill with diarrhea, vomiting, and nausea five times per week for several months at a minimum. (*Id.*).

In his brief in opposition to Defendants' summary judgment motion, Mr. Young asserts that a reasonable jury could infer that regularly providing food that made him ill (vomiting and diarrhea) was an objectively serious deprivation that rises to the level of an Eighth Amendment violation. (ECF Doc. 64, PageID#727) (citing *Collins v. Aramark Correctional Service, LLC*, 2017

---

[4] *But see Billioups v. Metro Gov't of Nashville & Davidson Cnty.*, No. 3:11-cv-0195, 2011 WL 3664682, at *1 (M.D. Tenn. Aug. 19, 2011) (holding that the delivery of a meal on dirty food trays on at least four occasions states an Eighth Amendment claim).

U.S. Dist. LEXIS 28141, at *9 (C.D. Ill. 2017)). Relying on *Prude v. Clark,* 675 F.3d 732 (7th Cir. 2012), Mr. Young contends that an adult's vomiting other than because of illness or drunkenness is rare and that "healthy, sober adults do not vomit a meal just because it doesn't taste good — and if the plaintiff is being truthful there was a veritable epidemic of vomiting during his stay." (*Id.* at PageID#727-28).

First, Mr. Young has failed to provide evidence to support his claim that Defendants caused him injury when they served food on the turquoise trays. Specifically, although Mr. Young argues that he suffered from diarrhea, vomiting, and nausea "[at] a minimum five…times a week for several months" when Defendants served him food on the turquoise trays, there is no evidence to support his claims that these symptoms were caused by the turquoise trays. (ECF Doc. 61-2, PageID#665 (citing ECF Doc. 15, PageID#99-100, ¶ 12)). To support his Eighth Amendment claim, he offers his own allegations and that of his fellow inmate, Mr. Willie Davis, who alleges that he "witnessed [Mr.] Young become ill after eating off the turquoise trays," Mr. Young vomited when he returned to his unit, and other inmates became ill after eating from the trays. (ECF Doc. 64-1, PageID#733-34, ¶ 4).  Mr. Young provided no evidence that he ever sought medical attention for symptoms of upset stomach, nausea, or diarrhea. (*See generally* ECF Doc. 61-2, PageID#664-65; ECF Doc. 64, PageID#726-28, 730-31).

Rather, as Defendants point out, Mr. Young merely spoke to a ManCI nurse practitioner on one occasion for approximately five minutes in February or March 2018. (Young Dep. 90:5-91:18). When the nurse practitioner had a break between seeing other inmates, Mr. Young approached her about his stomach symptoms. (*Id.* at 90:5-91:14-18). The nurse practitioner did not perform any testing of Mr. Young, told him there was "nothing [they] could do," and

recommended that he get some "Pepto Bismol." (*Id.* at 91:14-18). He never again spoke to the nurse practitioner or any other medical professional again his alleged illnesses. (*Id.* at 95:5-7).

Mr. Young has not presented sufficient evidence to establish that Defendants' turquoise trays exposed him to an objectively serious danger. In *Jenkins v. Cobb*, 2019 WL 7606124 (S.D. Ill. Oct. 1, 2019), the plaintiff alleged that he was frequently served food that was outdated and molded, resulting in him becoming ill and experiencing diarrhea, upset stomach, blood in his stool, boils, vomiting, hemorrhoids, and difficulty urinating. *Id.* at *2. The U.S. District Court for the Southern District of Illinois granted the defendants' motion for summary judgment motion because the plaintiff failed to present medical testimony that linked the allegedly outdated and moldy food to any of the symptoms that the plaintiff claims to have experienced. *Id.* at *4.

Moreover, in *McRoy v. Sheahan*, 2006 WL 2714836 (N.D. Ill. Sept. 22, 2006), a plaintiff raised an Eighth Amendment claim alleging that the defendants violated his civil rights by providing him with uncooked chicken, spoiled lunch meat, and spoiled milk. The plaintiff alleged that the food and beverages he ingested caused him injury. *Id.* at *1. The court granted defendants' motion for summary judgment because the plaintiff presented no evidence establishing that the food and beverages he ingested caused him any injury. *Id.* at *8. Although plaintiff asserted that he suffered from food poisoning – resulting in numerous symptoms including upset stomach, blood in his stool, diarrhea, hemorrhoids, vomiting, urine problems, boils, swollen hands and feet, headaches, inability to eat, and stress – the court in *McRoy* found that there was no evidence to support that the plaintiff's symptoms were caused by the food and beverages served by defendants. *Id.* The *McRoy* court further determined that the plaintiff provided no evidence that he ever sought medical attention for symptoms of upset stomach or diarrhea, with the exception of his own

testimony regarding one trip to the dispensary for over-the-counter medications and one complaint to an officer. *Id.*

Like the plaintiffs in *Jenkins* and *McRoy*, Mr. Young failed to produce evidence demonstrating that his symptoms resulted from the turquoise trays. As stated above, Mr. Young briefly visited a nurse practitioner for five minutes on one occasion, then never visited this nurse practitioner (or any other medical professional) again regarding his alleged illnesses. And Mr. Young does not produce any medical records corroborating his symptoms. Other than self-serving, conclusory statements in his Amended Complaint, his own affidavit, and the testimony of a fellow inmate, Mr. Young has failed to demonstrate how the turquoise trays caused his illness.

To the extent that Mr. Young attempts to establish the objective prong by alleging that "bacteria" settled in the crevices of the turquoise trays, this argument fails. In *Leonard v. Smoot*, No. 1:13-cv-097, 2013 WL 1755750, at *3 (S.D. Ohio Mar. 28, 2013), the court held that a plaintiff made "speculative allegation[s] that 'infectious pathogens' on his bread 'may well contain serious, transferable life-threatening infections and incurable diseases.'" *Id.* (internal citations omitted). However, the *Leonard* court found this allegation was "insufficient to establish that he has been denied 'the minimal civilized measures of life's necessities' or that 'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* at *3 (citing *Farmer,* 511 U.S. at 834).

Other courts have similarly found no § 1983 violation where a plaintiff fails to provide any support for his speculative allegation that his food may grow bacteria. *Marlow v. Blount Cnty. Jail*, No. 3:21-cv-151-DCLC-HBG, 2021 WL 2594793, at *4 (E.D. Tenn. June 24, 2021) (granting motion to dismiss where plaintiff "provide[d] no support for his speculative allegation that his food may grow bacteria before it is served to him due to a lack of food warmers"); *Prophete v. Gilless*, 869 F. Supp. 537, 538-39 (W.D. Tenn. 1994) (dismissing case where "plaintiff's speculation that

the food runs the risk of being contaminated with bacteria between the kitchen and cells" was "factually delusional"). Similarly, Mr. Young here provides no evidence to support his speculative allegations. Accordingly, Defendants are entitled to summary judgment on Mr. Young's Eighth Amendment claim because Mr. Young cannot satisfy the objective element of this claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Celotex*, 477 U.S. at 323.

### 2. *Proximate Causation*

#### a. **Legal Standard**

Defendants are also entitled to summary judgment on Mr. Young's Eighth Amendment claim because Mr. Young has failed to offer any evidence creating a genuine issue of fact on the proximate causation element of his § 1983 claim. *Deaton*, 989 F.2d at 889. Proximate causation is "an essential element of a § 1983 claim for damages." *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 661 (6th Cir. 1994) (internal citation omitted). "That is, a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Id.* at 659 (citing *Doe v. Sullivan Cnty., Tenn.*, 956 F.2d 545, 550 (6th Cir. 1992)).

Defendants contend that they are entitled to summary judgment here because Mr. Young has offered no medical records, medical bills, expert reports, or expert opinion to establish a proximate link between his alleged illnesses and any alleged constitutional violation on the part of Defendants. (ECF Doc. 60, PageID#611-13). Thus, Defendants assert that Mr. Young's failure to establish proximate causation is fatal to his § 1983 claim. (*Id.* at PageID#613).

Mr. Young's summary judgment motion fails to set forth any argument in support of the proximate cause element. (*See generally* ECF Doc. 61-2). Rather, the only elements he appears to address is the objective and subjective prongs of an Eighth Amendment conditions of confinement claim. (*Id.* at PageID#664-71).

18

In Mr. Young's brief in opposition to Defendants' summary judgment motion, however, he contends he can establish causation through circumstantial evidence. (ECF Doc. 64, PageID#730). Specifically, he points to his deposition testimony that he would become ill each time after eating from the turquoise trays, but would not become ill after eating off non-turquoise-colored trays. (*Id.* (citing Young Dep. 125:10-19)). This fact, according to Mr. Young, establishes an inference of causation. (*Id.*). Furthermore, while not entirely clear, the Court construes Mr. Young's opposition brief to argue that his testimony about his symptoms when he became ill is within a layperson's experience; thus, this testimony alone is sufficient to establish an inference of causation. (*Id.*) (citing *Collins v. Aramark Corr. Servs.*, 2017 WL 637676, at *4 (C.D. Ill. Feb. 16, 2017)). Mr. Young further asserts that Mr. Davis's testimony corroborates his claim that he would become ill after eating from the turquoise trays. (*Id.* at PageID#731), *citing* (Davis Decl. ¶ 4) ("I have witnessed Plaintiff Young become ill after eating off the turquoise trays: we had walked back to our housing unit after eating in the kitchen, and we made it to our unit Young vomited."). Finally, Mr. Young takes issue with Defendants' contention that he only visited the nurse one time for his illness. He points to his deposition testimony where he testified that: (1) he was indigent; (2) "only received $10 a month;" and (3) he "had to pay for his doctor visits." (*Id*). Because of this, he stated at his deposition that he "would not have any money to purchase hygiene or stationary supplies." (*Id.* (citing Young Depo 127:1-8; 128:16-22)).

In Defendants sur-reply, they contend that the declaration of Willie Davis submitted by Mr. Young does "absolutely nothing" to refute their proximate cause arguments. (ECF Doc. 66, PageID#745). They assert that, upon information and belief, Mr. Davis is not a physician who treated or evaluated Mr. Young, nor is he a competent medical expert testifying to the actual, proximate cause of Mr. Young's alleged illnesses, which is a prerequisite to establish a food

19

poisoning claim under Ohio law. (*Id.*) (citing *Ratliff v. Wendy's*, C.P. No. G-4801-CI-201903331-000, 2020 Ohio Misc. LEXIS 3580, at *7 (Jan. 31, 2020) and *Knizer v. Costco Wholesale Corp.*, No. 1:20-cv-2776, 2022 U.S. Dist. LEXIS 12677, at *3-5 (N.D. Ohio Jan. 24, 2022). In that regard, Defendants argue that even if Mr. Davis did see Mr. Young become ill after eating from the turquoise trays, there is no record evidence establishing that the turquoise trays caused Mr. Young's alleged food-borne illnesses "as opposed to the myriad of other potential causes of illness present in a prison." (*Id.*). According to Defendants, Mr. Young has the burden to establish proximate cause, and he failed to meet this burden.

Here, Mr. Young has failed to put forth record evidence demonstrating that the turquoise trays were the proximate cause of his alleged illnesses and symptoms. While Mr. Davis observed Mr. Young vomiting after eating from the turquoise trays, Mr. Young offers no evidence that directly links his symptoms to the turquoise trays beyond his own allegations. Defendants' citation to *Wilson v. Byrd,* No. 15-00160-KD-N, 2016 WL 1573265, (S.D. Ala. Mar. 14, 2016), is well-taken. In *Wilson*, the United States District Court for the Southern District of Alabama granted the defendant's motion for summary judgment against the plaintiff's Eighth Amendment conditions of confinement claim where the plaintiff failed to demonstrate that a condition of his confinement - an unsanitary kitchen - was the cause of his alleged symptoms of nausea and vomiting. *Wilson*, 2016 WL 1573265, at *6. Although the plaintiff contended that his symptoms were the result of an unsanitary kitchen, the court determined that his allegations were merely "conclusory" because: (1) the plaintiff failed to identify what he ate or link his nausea and vomiting symptoms to any food obtained from the kitchen or a kitchen condition; and (2) the plaintiff failed to allege any other inmate or staff member became ill after eating the same food he ate. *Id.* In addition, the

*Wilson* court found that while plaintiff's medical records supported his need for medical care due to nausea, the medical records belied his claim of food poisoning. *Id.*

Unlike *Wilson*, Mr. Young, in direct violation of this Court's order,[5] has failed to produce any medical records corroborating his alleged illness. Here, Mr. Young failed to meet his burden to establish proximate causation because he has not produced any evidence presenting a genuine dispute of material fact regarding whether the turquoise trays were the proximate cause of his alleged illnesses. Accordingly, I recommend that this Court grant Defendants' Motion for Summary Judgment due to Mr. Young's failure to satisfy the proximate causation prong of his Eighth Amendment claim.

### 3. *Subjective Component*

To establish the subjective prong, the plaintiff must demonstrate the defendant was deliberately indifferent. Deliberate indifference requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. In order to recover under the Eighth Amendment, Mr. Young must show that Defendants "subjectively perceived facts from which it inferred a substantial risk to [Mr. Young] of serious harm, actually drew that inference, and then disregarded the risk." *Correa v. Cullum*, No. 1:17-cv-300, 2018 WL 2020615, at *7 (S.D. Ohio May 1, 2018). The Supreme Court has rejected "a reading of the Eighth Amendment that would allow liability to be imposed on [defendants] solely because of the presence of objectively inhumane prison conditions." *Farmer*, 511 U.S. at 838 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299-300 (1991)).

Defendants contend that Mr. Young cannot establish the subjective prong of his Eighth Amendment claim. (*See* ECF Doc. 60, PageID#609-11). Specifically, they contend that Mr. Young

---

[5] In a December 12, 2022 minute order, I reminded Mr. Young that Judge Baughman previously ordered Mr. Young on June 25, 2022 to execute Defendants' authorization for release of his medical records, and I again ordered him to execute this authorization. (*See* ECF non-document entry dated 12/12/2022).

cannot establish that the Defendants acted intentionally, with deliberate indifference, or that they acted with ill-will or hatred for him. (*Id.* at PageID#609). First, they assert that Mr. Young had only asserted during discovery that "Defendants ignored a known risk of harm." (*Id.* (citing ECF Doc. 60-6, PageID#643)). Ignoring a known risk of harm, as Defendants assert, "sounds in negligence only" and is "certainly not indicative" of the required wanton or deliberate indifference state of mind necessary for Mr. Young to carry his burden. (*Id.* at PageID#610).

Next, Defendants contend that, rather than relying on "mere denials of [Mr. Young's] unfounded allegations (*i.e.,* Defendant James "falsified" inspection reports; replacement trays were not purchased between 2012 and 2018; Aramark was fined by ODRC and the Richland County Board of Health; and the Aramark Defendants had a policy against exchanging unsanitary trays, etc.)," Defendants have proffered record evidence showing that "in most instances" Mr. Young's allegations were "fabricated or inapplicable." (*Id.* at PageID#609-10). For example, Defendants point to Mr. James's response to Mr. Young's interrogatories where he responded that he subjectively believed that the trays did not exhibit a defect that would have rendered them unsuitable to serve food on. (*Id.* at PageID#610 (citing ECF Doc. 60-4, PageID#628)). Even if Mr. James was incorrect in his assessment of the condition of the turquoise trays, Defendants assert that such oversight does not rise to the level of wanton or deliberate conduct necessary for Mr. Young to establish the subjective component of an Eighth Amendment claim. (*Id.*). Defendants further assert that the record nonetheless shows that Aramark purchased and circulated new trays on several occasions, both before and after Mr. Young's allegations. (*Id.* (citing ECF Doc. 60-5, PageID#632-36)). Citing the affidavit of Melissa Gano, a district manager for Aramark, they concede that older plastic trays can become worn and stained. (*Id.* (citing ECF Doc. 60-1, PageID#615, ¶ 6)). However, Defendants assert that Aramark had a routine policy to replace older,

worn trays with newer ones, which they did in this instance (*Id.* (citing ECF Doc. 60-1, PageID#616, ¶7 and ECF Doc. 60-4). Defendants assert that those efforts, "even if not as expedient as [Mr. Young] would have liked," demonstrate lack of deliberate indifference and shields Aramark from liability. (*Id.* (citing *Graham v. Cnty. of Macomb*, 580 F. App'x 300, 301 (6th Cir. 2014).

Furthermore, Defendants contend that Mr. Young has failed to corroborate his allegations within his Amended Complaint that Aramark was fined by Richland County or its contract partner, ODRC, in any way relating to the disputed turquoise trays. (*Id.*). Rather, Defendants point to evidence that Mr. Young admitted in his deposition that he based his allegations on an article he allegedly saw in the *Columbus Dispatch*, which was not specific to ManCI, and hearsay from fellow prison inmates. (*Id.* at PageID#611).

Finally, Defendants contend that Mr. Young has offered no evidence of a written policy against a prisoner exchanging a defective food tray. (*Id.* (citing ECF Doc. 60-6, PageID#640)). Nonetheless, Defendants argue that Mr. Young admitted that a general tray-exchange policy would be necessary to keep inmates from claiming a non-existent defect after eating a portion of food, and thereafter seeking a whole new tray to "double up" on the meal. (*Id.* (citing ECF Doc. 60-6, PageID#640; Young Dep. 74:5-12; 113:18-114:1)). Defendants also point out that Mr. Young admitted that the prisoner practice of attempting to "double up" on meals is prevalent and could cause food/ration issues, which would justify such a policy. (*Id.* (citing Young Dep. 75:2-9). According to Defendants, Mr. Young admits that he was able to exchange his tray upon request on at least two occasions, contradicting his allegations that he could not exchange a tray that he deemed to be defective. (*Id.*).

To the extent that Mr. Young attempts to argue that there is "no telling how long the turquoise trays had been" in its alleged defective condition prior to his complaints because Defendants allegedly "spoliated the Weekly Sanitation Reports and other documents related to the inspection of the trays," this claim should be summarily rejected. (ECF Doc. 61-2, PageID#671). That is so because I previously determined in denying Mr. Young's motion for spoliation that he failed to demonstrate how the alleged weekly sanitation reports were relevant to his claims or defense. (*See* ECF Doc. 52, PageID#372-74).

To the extent that Mr. Young alleges that Aramark was fined by Richland County or its contract partner as proof of deliberate indifference, Defendants have established that there is no genuine dispute of material fact on this issue. Contrary to Mr. Young's allegations, Mr. Young has conceded that he based these allegations on an article he saw in the *Columbus Dispatch*, which were not specific to ManCI and hearsay from fellow ManCI inmates. (Young Dep., 118:3-119:13; ECF Doc. 60-6. PageID#641).

However, there is a genuine dispute of material fact regarding whether Defendants in fact had a policy of regularly purchasing and circulating new trays on several occasions. Defendants certainly have produced record evidence demonstrating that they purchased and circulated new trays on several occasions. Yet, Mr. Young has placed evidence into the record suggesting that from September 2013 to May 2018 Defendants did not replace the disputed turquoise trays. (ECF Doc. 61-2, PageID#669-70). Further, he presents evidence that indicates that he spoke with Mr. James regarding the alleged condition of the trays. (*Id.* at 665-67). Based on this evidence, a reasonable juror might be able to infer that Defendants knew of a risk regarding the trays and failed to address the risk. Nonetheless, because Mr. Young has failed to establish that there is a genuine dispute of material fact regarding the objective component and proximate causation prongs of his

Eighth Amendment claim, I recommend that the Court grant Defendants' Motion for Summary Judgment on this claim.

## VI.    RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court GRANT Defendant's Motion for Summary Judgment (ECF Doc. 60), and DENY Mr. Young's Motion for Summary Judgment (ECF Doc. 61-2).

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

Dated: March 30, 2023

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

25

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).